**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSEPH D. ANDERSON,<br>*Petitioner-Appellee*,<br><br>v.<br><br>DWIGHT NEVEN, Warden;<br>ATTORNEY GENERAL FOR THE STATE<br>OF NEVADA,<br>*Respondents-Appellants.* | No. 18-16502<br><br>D.C. No.<br>2:14 cv-2015<br>JAD<br><br><br>ORDER |

Filed September 11, 2020

Before: Sidney R. Thomas, Chief Judge, and A. Wallace
Tashima, and Kim McLane Wardlaw, Circuit Judges.

Order;
Statement by Judge Tashima;
Concurrence by Judge Wardlaw;
Dissent by Judge VanDyke

# SUMMARY[*]

## Habeas Corpus

The panel denied a petition for panel rehearing and denied on behalf of the court a petition for rehearing en banc.

In a statement respecting the denial of rehearing en banc, Judge Tashima wrote that he agrees wholeheartedly with Judge Wardlaw's opinion concurring in the denial of rehearing en banc.

Judge Wardlaw, joined by Chief Judge Thomas, concurred in the denial of rehearing en banc in this case in which the panel, in a memorandum disposition, affirmed the district court's grant of habeas relief because, as the district court observed, no reasonable attorney would have advised his client to plead guilty and ignore the state court's clear instructions for getting the charge dismissed. Judge Wardlaw wrote that the panel's unpublished decision, which had no precedential value, could not disturb the "uniformity of [our] court's decisions" and did not present a "question of exceptional purpose." She added "a few words in response to the dissent's more egregious mischaracterizations of what transpired in this case."

Dissenting from the denial of rehearing en banc Judge VanDyke, joined by Judge Bumatay, wrote that the panel's decision goes far beyond Congress's and the Supreme Court's limits on federal habeas review of state court

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

criminal convictions, is deeply disrespectful to our state court brethren, usurping their authority and improperly criticizing their rationale, all mixed with this court's own legal errors of both federal and state law that can only add insult to injury.

## COUNSEL

Charles L. Finlayson (argued), Deputy Attorney General; Heather D. Procter, Chief Deputy Attorney General; Aaron D. Ford, Attorney General; Office of the Attorney General, Carson City, Nevada; for Respondents-Appellants.

C.B. Kirschner (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Petitioner-Appellee.

## ORDER

The panel has voted to deny Respondents-Appellants' petition for panel rehearing. Chief Judge Thomas and Judge Wardlaw have voted to deny the petition for rehearing en banc, and Judge Tashima has so recommended.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc, and the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. *See* Fed. R. App. P. 35(a).

Respondents-Appellants' petition for panel rehearing and rehearing en banc is **DENIED**.

---

TASHIMA, Circuit Judge, statement respecting the denial of rehearing en banc:

Because, as a senior judge, I am prohibited from voting on whether to hear or rehear a case en banc, I file this separate statement. For the reasons briefly and succinctly stated therein, I agree wholeheartedly with Judge Wardlaw's opinion concurring in the denial of rehearing en banc.

---

WARDLAW, Circuit Judge, joined by THOMAS, Chief Judge, concurring in the denial of rehearing en banc:

This was a straightforward case. Joseph Anderson failed to yield at an intersection, resulting in a fatal automobile accident. He was charged in Nevada state court with, and convicted of, misdemeanor failure to yield. *See* Nev. Rev. Stat. § 484B.257. He was also separately charged with driving under the influence (DUI) causing death, an offense which requires the State to prove, as an element, that the defendant "does any act or neglects any duty imposed by law." *Id.* § 484C.430(1). The charging document specifically relied on Anderson's failure-to-yield offense to establish this element.

The obvious motion to dismiss on double jeopardy grounds was filed, which the Nevada state trial court denied as premature. However, the court made clear, in ALL-CAPS, that the criminal charge against Anderson for DUI causing death would be dismissed at trial on double jeopardy

grounds if the State did not come up with a predicate offense different than the failure to yield conviction. The State failed to do so, and nothing in the record suggests that the prosecution could have charged or proved an alternative theory. Indeed, even before our court, the State offered nothing more than vague speculation to explain how it could have charged the case differently. But rather than proceeding to trial, where the charge was all-but-guaranteed to be dismissed, Anderson's attorney advised him to plead guilty on the incorrect assumption that doing so would better position him to raise a double jeopardy argument on appeal. Anderson accepted his attorney's guidance. And after pleading guilty to a charge that was primed for dismissal, he was sentenced to up to twenty years in prison. Anderson's trial counsel later wrote to him, admitting that his advice was incorrect and that he should have recommended taking the case to trial.

The only claim presented by Anderson's habeas petition, and consequently, the only claim before our panel, was whether the attorney's advice constituted ineffective assistance of counsel. The answer is obvious: Yes. As the district court correctly observed in granting the habeas petition, no reasonable attorney would have advised his client to ignore the state court's clear instructions for getting the charge dismissed. We therefore affirmed the district court's grant of habeas relief.

Our panel's unpublished memorandum disposition had no precedential effect. It therefore could not disturb the "uniformity of [our] court's decisions." Fed. R. App. P. 35(a) (criteria for en banc rehearing). Nor did this appeal present a "question of exceptional importance." *Id.* While undoubtedly important to the parties, there was nothing to distinguish this case from the hundreds of habeas petitions

our court adjudicates every year.  Thus, it is little surprise that a majority of active judges concluded this was not the rare case worthy of en banc review.

Yet to read the dissent from denial of rehearing en banc, one would think that we mounted a full-on federal takeover of the Nevada state courts.  In the dissent's eyes, our "results-driven" decision, through its "layers of irony," "menaces federalism" and was "deeply disrespectful" to our colleagues on the state bench.  Dissent at 12, 28, 39, 40.  Indeed, the dissent claims that the reasoning behind our unpublished 10-paragraph disposition leaves readers lucky to escape "disaster" or even death by "dysentery."  Dissent at 13.

I will not attempt to refute these histrionics point by point.  Instead, for the benefit of those who have managed to survive their exposure to the panel disposition, I add only a few words in response to the dissent's more egregious mischaracterizations of what transpired in this case.

## I.

First, the dissent accuses the panel of reaching out to decide a double jeopardy claim that Anderson never raised. Dissent at 22–26.  Not so.  It was *the State* that injected double jeopardy into this ineffective assistance of counsel case through its argument that Anderson could not show prejudice from his attorney's bad advice because it would have been error for the trial court to dismiss the DUI charge on double jeopardy grounds.  Indeed, the State devoted 14 pages of its 33-page opening brief to the subject.  To address this argument, our panel had to determine whether the State was correct that the Double Jeopardy Clause did not apply on the facts presented.  And because the Nevada Supreme Court held on direct appeal that Anderson had no

viable double jeopardy claim, we necessarily had to determine whether that conclusion was proper.

In the panel disposition, we explained that the Nevada Supreme Court incorrectly decided a federal constitutional question: whether it would violate the Fifth Amendment's Double Jeopardy Clause to try Anderson on the charge of DUI causing death after he had already been convicted of failure to yield. Our conclusion was a function of the unique nature of the offense with which Anderson was charged. Under Nevada law, the crime of DUI causing death has *as an element* that the defendant "d[id] any act or neglect[ed] any duty imposed by law." Nev. Rev. Stat. § 484C.430(1). To satisfy that element in this case, the criminal information alleged that Anderson "did neglect his duty imposed by law to yield from a stop sign to oncoming traffic." In other words, to establish a necessary element of the crime, the prosecution intended to prove that Anderson had committed the Nevada offense of failure to yield—the very same offense for which Anderson had already been prosecuted and convicted.

By requiring the commission of a predicate offense as an element of the crime, the Nevada offense of DUI causing death operated in the same manner as a charge of felony murder. Under the Double Jeopardy Clause, a defendant who has been convicted of, for example, felony murder based on robbery cannot be separately charged with the same underlying robbery, and vice versa. *Harris v. Oklahoma*, 433 U.S. 682, 682 (1977) (per curiam) ("When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime, after conviction of the greater one."). So too here. Having convicted Anderson of failure to yield, the Double

Jeopardy Clause barred the State from turning around and trying him on a charge of DUI causing death that relied on that same failure-to-yield offense to satisfy a necessary element of the crime.

Anderson therefore had a viable double jeopardy claim, and the state court would have been correct to dismiss the charge. Yet by heeding his attorney's erroneous advice and pleading guilty, Anderson was instead sentenced to up to twenty years in prison. This was textbook ineffective assistance of counsel.**[1]**

## II.

Next, the dissent asserts that the panel failed to defer to the Nevada Supreme Court on a question of state law. Dissent at 26–28. This is not true for the simple reason that the Nevada Supreme Court never decided a state law question. The Nevada Supreme Court's brief double jeopardy discussion, which relied primarily on United States Supreme Court cases, did not adjudicate any questions of state law but instead (mis)applied federal double jeopardy doctrine. One need only read the relevant passage to see if, as the dissent posits, Dissent at 28, the Nevada Supreme Court was "interpret[ing] . . . the elements of Nevada criminal law":

> A claim that a conviction violates the Double
> Jeopardy Clause generally is subject to de

---

[1] Again, I emphasize that the panel analyzed the double jeopardy issue only to respond to the State's argument that Anderson suffered no prejudice from his attorney's bad advice. It is not clear how the dissent thinks the panel could have addressed this argument—to which the State devoted almost half of its opening brief—without determining how the Double Jeopardy Clause applied in the context of this case.

novo review on appeal." *Davidson v. State*, 124 Nev. 892, 896, 192 P.3d 1185, 1189 (2008). Failure to yield is not a lesser-included offense of DUI causing death because each requires proof of an element the other does not "notwithstanding a substantial overlap in the proof offered to establish the crimes." *Brown v. Ohio*, 432 U.S. 161, 166 (1977) (internal quotation omitted). Therefore, convictions for both do not violate the proscriptions against double jeopardy. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) (establishing an elements test for double jeopardy purposes); *Jackson v. State*, 128 Nev. —, —, 291 P.3d 1274, 1278 (2012), *petition for cert. filed*, 81 U.S.L.W. (U.S. Mar. 5, 2013) (No. 12-9118); *see also State of Nevada v. Eighth Judicial Dist. Court*, 116 Nev. 127, 135 & 136 n. 7, 994 P.2d 692, 697 & n. 7 (2000) (DUI and "traffic code infractions occurring during the same driving episode" each require proof of an element the other does not and are not the same offenses under *Blockburger*). We conclude that the district court did not err by rejecting Anderson's claim or abuse its discretion by denying his motion to dismiss. *See Hill v. State*, 124 Nev. 546, 550, 188 P.3d 51, 54 (2008) (we review a district court's denial of a motion to dismiss for an abuse of discretion).

*Anderson v. State*, 129 Nev. 1095, 2013 WL 5338521, at *1 (2013) (table).

It is plain from this short paragraph that the Nevada Supreme Court was not holding forth on the elements of the state failure-to-yield and DUI-causing-death offenses. Instead, it opined that the fact that each offense "require[d] proof of an element the other does not," was enough, on its own, to establish that there was no double jeopardy violation. *Id.* As the Supreme Court's decision in *Harris* illustrates, however, it was this analysis of federal law that was incorrect. The felony murder and robbery with firearms charges in *Harris* also each required proof of an element the other does not; felony murder does not require a showing that the defendant committed robbery—it can be predicated on any number of felonies—and robbery does not require a killing. *See Harris*, 433 U.S. at 682. But the Court nevertheless concluded that because, in that case, the defendant had been convicted of felony murder predicated on robbery with firearms, the Double Jeopardy Clause barred a successive prosecution for the same robbery with firearms offense. *Id.*

The Nevada Supreme Court failed to appreciate that the same principle applied in this case, because, as charged here, the DUI causing death charge had, as an element, that Anderson committed the offense of failure to yield (for which he had already been separately convicted). This was an error of *federal* law, not state law, and thus the panel disposition correctly concluded that our court was not required to defer to the state court's decision.

## III.

Finally, the dissent argues that the DUI causing death charge did not actually require proof of a predicate criminal offense, and that the neglect of legal duty element could—at least "possibly"—be satisfied by a showing of simple negligence. Dissent at 30. And it advances its own novel

theory that because the failure-to-yield offense "imposes two separate duties on drivers," whereas DUI causing death only requires the neglect of one duty for its predicate, the two crimes cannot overlap to violate the Double Jeopardy Clause.

It is enough to say that all of this would be news to the State, which has never advanced any such arguments—not in the district court, not in its merits briefs on appeal, and not in its petition for rehearing en banc. It is quite remarkable that at the same time our dissenting colleague accuses the panel of showing a lack of respect for state courts, he appears to himself assume that Nevada's own attorneys do not understand the meaning of the state's criminal statutes. In any event, we are limited to the arguments raised by the parties, and thus the dissent's *sua sponte* adventure through Nevada law is not before us. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

*   *   *

The panel decision was entirely correct. And a majority of active judges decided that our unpublished, non-precedential disposition was not worthy of en banc review. I concur in that decision.

---

VANDYKE, Circuit Judge, joined by BUMATAY, Circuit Judge, dissenting from denial of rehearing en banc:

Federal habeas review of state court criminal convictions implicates well-known federalism and comity concerns, which is why both Congress and the United States Supreme Court have repeatedly stressed the carefully delimited and extraordinarily deferential nature of such review. Our

court's decision in *Anderson v. Neven*, 797 F. App'x 293 (9th Cir. 2019) goes far beyond those clear limits—in multiple ways. The decision is deeply disrespectful to our state court brethren, usurping their authority and improperly criticizing their rationale, all mixed with our court's own legal errors of both federal and state law that can only add insult to injury. Federal habeas relief from state criminal convictions exists to remedy only the most "extreme malfunctions in the state criminal justice systems." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citation omitted). There were no "extreme malfunctions" in Anderson's state court proceedings. But this court's decision multiplies them.

First, and perhaps most troubling, the panel tutored the Nevada Supreme Court on the elements of Nevada state criminal offenses. Yet as the United States Supreme Court has said again and again, not even *it* may second-guess state courts on the elements of state criminal law. And here, the Nevada Supreme Court's broad statement that, in Nevada, "[f]ailure to yield is not a lesser-included offense of DUI causing death because each requires proof of an element the other does not," *Anderson v. State*, 129 Nev. 1095, 1095 (2013), is not only unmistakably clear; it is quite defensible, as explained below.

Second, the panel's conclusion that the Nevada Supreme Court erroneously explicated Nevada's criminal law and, by extension, its double jeopardy analysis, completely undercuts the panel's conclusion on the only claim actually raised in Anderson's federal habeas petition: that his trial counsel was ineffective because he advised Anderson to plead guilty and then raise his double jeopardy claim on appeal. If the panel was right that the Nevada Supreme Court got the double jeopardy question wrong, then

Anderson was prejudiced—not, of course, by his trial counsel advising him to present that claim to the Nevada Supreme Court—but rather by the Nevada Supreme Court getting it wrong.  But as Anderson has acknowledged again and again, he does not challenge the Nevada Supreme Court's decision in his federal habeas petition.  The panel's inappropriate criticism of the Nevada Supreme Court's double jeopardy analysis eviscerates Anderson's ineffective assistance of counsel claim—the only claim properly before this court.

These are serious errors, and they are fatal to the panel's conclusion.  But the circular inconsistency at the heart of the panel's decision is just the beginning.  The panel's decision, short as it is, is predicated on nested, inescapable errors, each of which is independently fatal to its conclusion.  The decision is indefensible and, as described below and confirmed by the panel's concurrence in denial of rehearing en banc, trying to justify it is like reading a choose-your-own-adventure novel based on The Oregon Trail where, regardless of which path you choose, the story always ends in disaster and everyone perishes from dysentery.

## Background

### 1.  Facts

High on marijuana, Joseph Anderson ran a stop sign causing a collision that killed another driver.  On January 19, 2012, the State charged Anderson with Driving Under the Influence of a Controlled Substance thereby Causing Death to Another, a felony.  The complaint stated that Anderson "while under the influence of . . . Marijuana . . . did willfully and unlawfully drive . . . neglect[ing] his duty imposed by law to yield from a stop sign[,] . . . proximately caus[ing] [] Death to another."  The next day, the State charged Anderson

in a subsequent complaint with three misdemeanors: Count I: Vehicle Entering Intersection Marked "Stop" or "Yield"; Count II: Driving without a Valid License; and Count III: Security for Payment of Tort Liabilities Required. The State filed both complaints in the Pahrump Justice Court on the same day, January 23, 2012.[1]

## 2. Procedural History

### A. Pahrump Justice Court & Nevada District Court

On May 9, 2012, at a pre-trial hearing in justice court for both complaints, upon trial counsel's advice Anderson pled no-contest or guilty to all of the misdemeanor charges, including the failure-to-yield charge. On June 8, 2012, the justice court transferred the remaining felony case to the Nevada district court. Pursuant to his plan, counsel then filed a motion to dismiss the felony complaint on double jeopardy grounds, reasoning that Anderson's guilty plea to the failure-to-yield misdemeanor barred his prosecution for the felony DUI charge. The Nevada district court denied the motion to dismiss, explaining that "it is possible for a defendant to meet the legal duty element of the statute [DUI causing death] by violating any number of rules of the road." But the court emphasized (literally) that "IF THE STATE IS UNABLE TO PROVE ANY VIOLATION OF LEGAL DUTY AT TRIAL OTHER THAN THE FAILURE TO STOP, THEN THIS CASE WILL BE DISMISSED."

---

[1] The misdemeanor and felony charges could not be tried together under Nevada law. Nev. Rev. Stat. Ann. § 4.370(3) ("Justice courts have jurisdiction of all misdemeanors and no other criminal offenses except as otherwise provided by specific statute."). But felonies may begin adjudication in a justice court as "justice courts have jurisdiction to conduct preliminary examinations in felony complaints." *Koller v. State*, 130 P.3d 653, 656 (Nev. 2006).

Taking the hint, trial counsel entered a conditional guilty plea agreement with the State on the felony DUI charge that preserved "the right to appeal this Court's ruling on the jeopardy issue" and dismissed two other charges—a felony and a misdemeanor—"as a consequence of [the] negotiation." The Nevada district court then entered judgment convicting Anderson of the felony DUI charge, and sentenced Anderson to a maximum term of 240 months. Trial counsel appealed the conviction on double jeopardy grounds to the Nevada Supreme Court.

## B. Nevada Supreme Court Decision on the Merits

On appeal, the Nevada Supreme Court examined whether the misdemeanor and felony statutes contained the same elements and whether the Nevada Legislature intended to prohibit concurrent convictions of both statutes. *Anderson*, 129 Nev. at 1095. The Nevada Supreme Court concluded, consistent with precedent, that the Legislature intended that "convictions for each of the ["rules of the road" and "driving while intoxicated"] offenses [were] not [] impermissibly redundant." *Nevada v. Eighth Jud. Dist. Ct.*, 994 P.2d 692, 699 (Nev. 2000)), *see Anderson*, 129 Nev. at 1095. Then applying the elements test from *Blockburger v. United States*, 284 U.S. 299, 304 (1932) to the specifics of the Nevada laws before it, the Nevada Supreme Court held "[f]ailure to yield is not a lesser-included offense of DUI causing death because each requires proof of an element the other does not . . . ." *Anderson*, 129 Nev. at 1095.

Anderson's trial counsel filed a petition for rehearing, which the Nevada Supreme Court denied.

## C.  Anderson's State Habeas Petition

Anderson then filed a petition for Writ of Habeas Corpus in the Nevada district court alleging ineffective assistance of counsel.  Anderson alleged he did not receive effective assistance during the plea process because his trial counsel recommended a guilty plea rather than going to trial, rendering Anderson's double jeopardy claim premature.[2]  Anderson also alleged that trial counsel was ineffective because he did not familiarize himself with relevant law when counsel recommended Anderson pursue a double jeopardy strategy.  Anderson reasoned that because the Nevada Supreme Court ultimately held that the failure-to-yield misdemeanor was not a lesser-included offense of the felony DUI, "NO Double Jeopardy claim was available" from the outset.  Notably, Anderson did not challenge the Nevada Supreme Court's merits ruling.  The Nevada district court denied Anderson's petition.

### i.   Nevada Supreme Court Adjudication

Anderson appealed the denial of his habeas petition to the Nevada Supreme Court.  That court evaluated the petition under *Strickland v. Washington*, which required Anderson to demonstrate that his trial counsel's performance was unreasonably deficient resulting in prejudice such that, but for counsel's errors, the result for Anderson would have been different.  466 U.S. 668, 697 (1984).  The Nevada Supreme Court determined Anderson did not allege either that he rejected a more favorable plea offer or that he would

---

[2]  This argument was factually inconsistent with that actually happened in Anderson's case.  The Nevada Supreme Court did not hold that Anderson's claim was premature; quite the opposite, it treated Anderson's double jeopardy claim as ripe and addressed it on the merits.  *See Anderson*, 129 Nev. at 1095.

have insisted on going to trial were it not for his trial counsel's advice. The court further noted that Anderson received as a benefit of his guilty plea the dismissal of two other cases distinct from the failure-to-yield misdemeanor complaint and DUI causing death felony complaint. The Nevada Supreme Court declined to find Anderson's trial counsel ineffective and affirmed the lower court's denial of his petition.

## D. Federal District Court Habeas Petition

Anderson then filed a federal habeas petition again alleging ineffective assistance of counsel on the same grounds as his failed state habeas petition. This time, however, Anderson added that he would have insisted on a trial—and not entered a plea deal—if he had known the double jeopardy defense was unavailable. He still did not challenge the Nevada Supreme Court's decision to reject his double jeopardy defense.

The federal district court noted that to succeed, Anderson must prove that the Nevada Supreme Court's denial of his state habeas petition was objectively unreasonable and clearly erroneous. The district court also acknowledged that the Nevada Supreme Court used the correct *Strickland* standard in evaluating the petition.

In analyzing Anderson's claim, the district court considered it significant that, after the Nevada Supreme Court rejected Anderson's double jeopardy appeal, his trial counsel wrote Anderson "admitting that he gave poor advice and that he regretted it." Opining that that "going to trial was clearly the more advantageous choice," the district court explained that Anderson "was woefully let down when his conviction was affirmed because—not surprisingly— jeopardy had not yet attached."

The district court summarily rejected that Anderson received any real benefit from the State's dismissal of the two charges, as Anderson likely would have been "grant[ed] probation" for one, while the other simply "was a misdemeanor." The district court ultimately concluded that the Nevada Supreme Court's review of Anderson's state habeas petition had "failed to consider the likelihood of success that Anderson would have had *at trial* on his double-jeopardy defense," (emphasis added), and granted habeas relief on Anderson's ineffective assistance claim.

### i. Second Federal District Court Order

The State asked the district court to reconsider its order, explaining that, contrary to the basis for the court's grant of habeas relief, the Nevada Supreme Court actually *had* addressed Anderson's double jeopardy claim on the merits, and rejected it. This did not sway the district court, but the court did attempt to shore up its factually flawed basis for habeas relief in an order denying reconsideration.

In this second order, the district court concluded that the Nevada Supreme Court's double jeopardy ruling applied United States Supreme Court precedent incorrectly, but in so arguing the district court incorrectly relied on language from a *plurality* decision it referred to as "the Court in *Dixon*." The district court further acknowledged that "there is a possibility that the State would have been able to prove a different predicate offense [at trial] for the felony DUI charge against Anderson," but because "there is also [a] probability that it would not have been able to do so[,] that is sufficient to undermine the outcome of Anderson's criminal proceeding." The court afforded no deference to Anderson's counsel's weighing of these possibilities, or *Strickland*'s admonition that petitioners claiming ineffective assistance of counsel must show that the likelihood of a

different result is "substantial."  Rather, the court concluded
that the "reasonable probability" that Anderson might have
prevailed at trial on a double jeopardy defense was enough
to establish prejudice to Anderson under *Strickland*.  The
district court did not attempt to connect its new analysis to
the actual arguments in Anderson's federal habeas petition,
and "decline[ed] to reconsider [its] prior ruling."

### E.  Ninth Circuit Panel Memorandum Disposition

The State appealed to this court.  The panel, like the
federal district court, did not address the habeas claims as
actually pled by Anderson—that jeopardy did not attach or
that trial counsel should have known the Nevada Supreme
Court would not find a double jeopardy violation.  Instead,
the panel joined the district court in concluding that the
outcome on the double jeopardy claim likely would have
changed under Nevada law if Anderson had gone to trial on
the felony DUI charge.  *See Anderson v. Neven*, 797 F.
App'x 293, 294–95 (9th Cir. 2019).

The panel explained that although "the 'does any act or
neglects any duty imposed by law' element of the DUI
offense" could have been established "through some
predicate other than the failure-to-yield offense . . . . the
record is devoid of any evidence regarding any other theory
upon which the State could have satisfied this element at
trial."  *Id*.  Thus, "[t]he mere possibility that the State may
have been able to rely on an alternate predicate offense does
not negate Anderson's showing of likely success" in his
double jeopardy defense at or after trial.  *Id*. at 295.
Accordingly, the panel agreed with the federal district court
that "no reasonable attorney would have advised Anderson"
to plead guilty rather than go to trial because there was "a
high likelihood that he would have been able to raise the

double-jeopardy defense successfully" at trial. *Id*. at 294 (alteration marks omitted).

The obvious problem with the panel's conclusion that Anderson might have prevailed in the state trial court on his double jeopardy claim is, "so what?" Given the Nevada Supreme Court's rejection of Anderson's double jeopardy claim on direct appeal, there is no reason to think the Nevada Supreme Court would have reached a different conclusion *if* Anderson had gone to trial, *if* the prosecution had not amended the charges (a big "*if*," given the trial court's emphatic direction to do so), and *if* Anderson had prevailed in trial court. But the panel had a response: the Nevada Supreme Court was wrong. More specifically, the Nevada Supreme Court's explanation about Nevada law was right generally, but not "*in Anderson's particular case*." *Id.* at 295 (emphasis in original).

What the panel never explained is why this matters for the only claim that Anderson made in this federal habeas action: ineffective assistance of trial counsel. The panel's inquiry into the merits of the Nevada Supreme Court's decision resulted in an irreconcilable contradiction in its *Strickland* analysis: that trial counsel was ineffective because he predicted the Nevada Supreme Court would rule precisely the way the panel believed *it should have* ruled. Under the panel's theory of the case, what actually stymied trial counsel's able strategy was *not* any error by counsel, but rather the Nevada Supreme Court's misunderstanding of how Nevada law worked "*in Anderson's particular case.*" *Id.* (emphasis in original). And Anderson never challenged the Nevada Supreme Court's decision. This inherent contradiction is never addressed in the panel's decision or its concurrence in denial of rehearing en banc.

### Standard of Review

State supreme courts are the final arbiters of state law. Principles of federalism dictate that federal courts overturn state court convictions under AEDPA only in the limited instances where the adjudicated outcome "resulted in a decision that was contrary to, or involved unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Supreme Court precedent should not be framed at "a high level of generality" such that "a lower federal court could transform even the most imaginative extension of existing case law into 'clearly established Federal law.'" *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (citation omitted). For a State court decision to be overturned, it must arrive at a conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Even if a Supreme Court case addressed a similar topic or type of case, the step of extending a rationale drawn from Supreme Court precedent means such rationale, "by definition," is not clearly established law. *White v. Woodall*, 572 U.S. 415, 426 (2014). State courts need not cite or be aware of Supreme Court precedent to ensure deferential review. *Early v. Packer*, 537 U.S. 3, 8 (2003).

When evaluating ineffective assistance claims, counsel's deficient performance must result in errors so far below the objective standard of reasonableness that, but for the errors, the outcome would have been different. *Strickland*, 466 U.S. at 687; *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner must prove "both deficient performance and prejudice." *Bell v. Cone*, 535 U.S. 685, 695 (2002). Given that "[v]irtually every act or omission of counsel" would

have "some conceivable effect on the outcome of the proceeding," *Strickland*, 466 U.S. at 693, petitioners must show the likelihood of a different result is "substantial." *Id.* at 682. In weighing counsel's performance against an adverse court ruling, "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695. Ultimately, given "the strong presumption of competence," review is "doubly deferential" when a counsel's performance is viewed through the lens of both 28 U.S.C. § 2254(d) and *Strickland*. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citation omitted).

We review grants of habeas relief de novo. *Bradford v. Davis*, 923 F.3d 599, 609 (2019).

## Discussion

### 1. The State-Law Basis for the Nevada Supreme Court's Double Jeopardy Decision Binds this Court and Does Not Violate Federal Law.

The panel's disposition and concurrence compound errors. We'll start with the obvious ones.

### A. The Panel Improperly Addressed an Unraised Claim.

The panel should not have addressed the merits of the Nevada Supreme Court's double jeopardy decision because Joseph Anderson never challenged it. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (observing the court cannot resolve claims that were not properly raised in the habeas petition). Anderson conceded in his appellate brief that "[t]he Nevada Supreme Court's ruling on the direct

appeal is irrelevant." As recently as oral argument, Anderson's appellate counsel continued to deny that Anderson was challenging the merits of the underlying state supreme court decision. That eliminated our ability to grant habeas relief predicated on that decision being incorrect. *Paradis v. Arave*, 20 F.3d 950, 954 (9th Cir. 1994) ("Because this issue was not presented to the district court, we will not review it."). That should have made this an easy case—for the State.

But the panel's disposition turns on a *sua sponte* perceived error in the Nevada Supreme Court's double jeopardy decision, even though neither Anderson nor the State actually presented that issue. The panel in its concurrence now claims that "[i]t was *the State* that injected double jeopardy into this ineffective assistance of counsel case . . . ." Not true. The State did discuss the Nevada Supreme Court's merits decision in its appellate briefing for two reasons, but neither justified the panel raising and deciding a claim that, even in its concurrence, the panel acknowledges was never "before our panel."

First, the State had to address the Nevada Supreme Court's double jeopardy decision because the federal district court erroneously held in its first order that Anderson's guilty plea resulted in a *premature* double jeopardy claim. The State explained in its briefing for rehearing before the district court that this was simply factually wrong because the Nevada Supreme Court squarely addressed (and rejected) Anderson's double jeopardy claim on the merits. *Anderson*, 129 Nev. at 1095.

Second, the State discussed the Nevada Supreme Court's double jeopardy decision to rebut the district court's false notion that Anderson was prejudiced by his counsel not going to trial because Anderson may have prevailed on his

double jeopardy claim *in trial court*. Because the Nevada Supreme Court rejected Anderson's double jeopardy claim on the merits, it would have made no difference if he had gone to trial and the trial court had dismissed his claim on double jeopardy grounds. If that had happened, the Nevada Supreme Court would have just reversed the trial court's double jeopardy ruling and sent the case back. As the State explained in its opening brief:

> Even if Anderson had proceeded to trial on his felony DUI claim causing death, he would not have prevailed on his double jeopardy challenge on appeal. The federal district court's assumption that going to trial would have created a complete defense to DUI causing death or resulted in a different analysis from the Nevada Supreme Court was wrong. . . . [A]s the Nevada Supreme Court specifically rejected the double jeopardy challenge on Anderson's direct appeal, there would have been no difference on appeal had Anderson proceeded to trial rather than enter his guilty plea."

Contrary to the panel's revisionist history, the State didn't bring the Nevada Supreme Court's merits decision into the case; the federal district court did, when it (1) erroneously ruled that Anderson's guilty plea resulted in a premature double jeopardy claim, and (2) erroneously focused on whether Anderson might have prevailed on his double jeopardy claim *in trial court*. The State can hardly be faulted for responding and explaining why the district court's decision was wrong. The State's reliance on the Nevada Supreme Court's double jeopardy decision as dooming Anderson's chances of prevailing on that claim,

whether or not he went to trial, cannot be weaponized as a legitimate reason for the panel to attack that decision when Anderson himself didn't. *See Ahlswede v. Wolff*, 720 F.2d 1108, 1109 (9th Cir. 1983) (per curiam) ("[T]he only issues properly before this court are those in the petition.").**[3]**

Moreover, *even if* the State had gratuitously and needlessly defended the merits of the Nevada Supreme Court's double jeopardy decision, that still would not justify the panel reaching out to decide an issue that Anderson never raised. Federal habeas review requires the *petitioner* to frame the review through his claims. *See Mannes v. Gillespie*, 967 F.2d 1310, 1316 n.6 (9th Cir. 1992) (declining

---

**[3]** While the panel's concurrence erroneously claims that it was "*the State* that injected double jeopardy into this . . . case," it is notable that neither the panel's original decision nor its concurrence ever confronts the *actual reason* the State talked about the Nevada Supreme Court's double jeopardy decision. That argument, block-quoted above, was that whether he went to trial or pled-and-immediately-appealed, Anderson's double jeopardy claim was ultimately doomed because the Nevada Supreme Court was going to reject Anderson's double jeopardy claim on the merits either way. As the State explained, "[t]he Nevada Supreme Court's [double jeopardy] determination was not premised specifically upon a conviction pursuant to a guilty plea versus a jury trial." Thus, Anderson could not have been prejudiced by his counsel's decision to appeal immediately versus go to trial—the ultimate result at the Nevada Supreme Court would be identical.

Like Anderson, the State's arguments to the panel all assumed that the *merits* of the Nevada Supreme Court's decision were not on the table *because Anderson never challenged that decision*. As the State explained in its opening brief to the panel: "[T]he Nevada Supreme Court rejected Anderson's argument that the two crimes violated double jeopardy. Anderson conceded the truth of this point in . . . his federal habeas petition . . . ." It was only the panel that felt the need to reach out and "explain[] that the Nevada Supreme Court incorrectly decided" Anderson's double jeopardy claim in order to justify its decision.

to consider on appeal a double jeopardy claim that the petitioner did not raise in the original state or federal habeas petition). As the Supreme Court has made clear, we are barred from reviewing claims not included in a federal habeas petition. *See, e.g.*, *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Coleman v. Thompson*, 501 U.S. 722, 745 (1991). The panel had no business reaching out and deciding whether the Nevada Supreme Court's double jeopardy decision was correct.[4]

## B. Nevada's State Law Adjudication Binds this Court.

Both the federal district court and the panel concluded that the Nevada Supreme Court erred in rejecting Anderson's double jeopardy claim and relied on that conclusion in granting habeas relief. But the Nevada Supreme Court's adjudication of Anderson's double jeopardy appeal on the merits may not be challenged by this court, for two independent reasons.

---

[4] The panel asks in footnote 1 of its concurrence how it "could have addressed . . . the State's argument that Anderson suffered no prejudice" without reaching and effectively overruling the Nevada Supreme Court's Double Jeopardy decision. Easy. It could have simply explained that Anderson's counsel could not possibly have been ineffective for presenting a question to the Nevada Supreme Court that (in the panel's mistaken view) the Nevada Supreme Court *should have decided* in Anderson's favor. And because the only claim Anderson raised in this court was an ineffective assistance of counsel claim, his federal habeas claim necessarily fails. Perhaps what the panel is really asking in its footnote is how could it possibly have granted habeas relief to Anderson without *sua sponte* reaching out and effectively overturning the Nevada Supreme Court's decision (that Anderson never challenged). Now *that*, admittedly, is a harder question.

First, the panel attempted to conjure fault with the Nevada Supreme Court's decision by recasting it. The Nevada Supreme Court held that "[f]ailure to yield is not a lesser-included offense of DUI causing death because each requires proof of an element the other does not 'notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Anderson*, 129 Nev. at 1095 (quoting *Brown v. Ohio*, 432 U.S. 161, 166 (1977)). On its face, this is a broad and categorical statement. Yet the panel read this as merely a general statement that "failure to yield is not *always* a lesser included offense." *Anderson*, 797 F. App'x at 295 (emphasis added). But that's not what the Nevada Supreme Court said, and it is quite telling that the panel found it necessary to add words to the Nevada Supreme Court's ruling to justify the panel's forced misreading of it. By virtue of its reframed holding and the fact the Nevada Supreme Court did not include the phrase "*in this case*" in its explication of Nevada law, *see Anderson*, 129 Nev. at 1095, the panel strangely infers that the Nevada Supreme Court must have been speaking about statutory elements generally, rather than Anderson's specifically pled offenses. *Anderson*, 797 F. App'x at 295.[5]

---

[5] Stranger still, the panel in its concurrence now argues that it its original decision could not have "failed to defer to the Nevada Supreme Court on a question of state law" because "the Nevada Supreme Court never decided a state law question." That's not what the panel said in its original decision, which states: "we defer to the Nevada Supreme Court's conclusion that, *as a matter of state law*, failure to yield is not a lesser included offense of DUI causing death." *Anderson*, 797 F. App'x at 295 (emphasis added). The Nevada Supreme Court's categorical statement that "[f]ailure to yield is not a lesser-included offense of DUI causing death *because each requires an element the other does not*," *Anderson*, 129 Nev. at 1095 (emphasis added), cannot reasonably be read as anything other than "holding forth on the elements of the state failure-

Only through that results-driven reading can the panel then claim that it is properly deferring to the Nevada Supreme Court's binding interpretation of state law, while rejecting the state court's supposed misapplication of clearly established federal law.   This is a deliberately strained misreading of the Nevada Supreme Court's description of Nevada law.  Beyond the fact that one would normally read a court's legal analysis in the context of the issues actually before the court (here, Anderson's double jeopardy claim), the decision's text expressly applies the Nevada Supreme Court's reasoning to determine "the district court did not err by rejecting *Anderson's claim*."  *Anderson*, 129 Nev. at 1095 (emphasis added).

Second, even if Anderson had challenged the Nevada Supreme Court's double jeopardy ruling, that ruling turned squarely on that court's interpretation of the elements of Nevada criminal law, which, like it or not, is binding on this court.  Perhaps because lower federal courts seem to forget this, the Supreme Court has had to repeatedly "reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).[6]

---

to-yield and DUI-causing-death offenses."  The panel was right before it was wrong.

[6] *See also Brown v. Ohio*, 432 U.S. 161, 167 (1977) ("Ohio courts 'have the final authority to interpret . . . that State's legislation.'"); *Illinois v. Vitale*, 447 U.S. 410, 416 (1980) ("We accept, as we must, the Supreme Court of Illinois' identification of the elements of the offenses involved here."); *Missouri v. Hunter*, 459 U.S. 359, 368 (1983) ("We are bound to accept the Missouri court's construction of that State's statutes."); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio

Even if we were allowed to slip off our federal robes and try on those of a state supreme court justice, the Nevada Supreme Court's explication of Nevada's criminal statutes was far from clearly wrong. The Nevada Supreme Court's decision, like many state court decisions affirming criminal convictions, is not long on analysis or explanation. It need not be. Even so, on close inspection there is a good basis for thinking that the panel's forbidden frolic with state criminal law interpretation managed to get *both* state and federal law wrong.[7]

We start with the text of Nevada's DUI causing death statute. Section 484C.430(1) of Nevada's revised statutes makes it a felony if someone drives while under the influence of a prohibited substance and

---

Legislature did not intend cumulative punishment for the two pairs of crimes involved here.").

[7] The panel's concurrence criticizes this next portion of the dissent as "advanc[ing] its own novel theory" of Nevada state law, and responds that "[i]t is enough to say that . . . the State . . . never advanced any such arguments." Of course it didn't. Neither Anderson nor the State ever challenged the Nevada Supreme Court's double jeopardy analysis, so there was obviously no reason for the State (or anyone else) to defend it. It is only *because* the panel in its opinion *sua sponte* attacked the Nevada Supreme Court's analysis that the issue has even become relevant. Having embarked on *its own* "*sua sponte* adventure through Nevada law" by expressly basing its decision on the conclusion that the Nevada Supreme Court erred on its explication of the elements of Nevada law "*in Anderson's particular case*," *Anderson*, 797 F. Appx. at 295 (emphasis in original), the panel cannot now so easily ignore the disaster that awaits at the end of its own chosen chapter. If the panel wants to avoid such unpleasant surprises, it probably shouldn't reach out and decide issues not raised by the parties—especially issues of state law where the state's highest court has authoritatively spoken.

> . . . **does any act or neglects any duty imposed by law** while driving or in actual physical control of any vehicle on or off the highways of this State, **if the act or neglect of duty proximately causes the death of**, or substantial bodily harm to, **another person** . . . .

Nev. Rev. Stat. Ann. § 484C.430(1) (emphasis added). While Anderson and the panel insist on speaking of this language as requiring a "predicate offense," the statutory language does not actually require a predicate *criminal offense* to be convicted of DUI causing death.[8] It only requires that the defendant "neglects any duty imposed by law" and that that "neglect of duty proximately causes the death of . . . another person." *Id*. The Nevada Supreme Court has never said this element requires a "neglect of duty imposed by *criminal* law." To the contrary, the Nevada Supreme Court in discussing Nevada's DUI causing death statute has elsewhere characterized the "act or neglect of duty" required by that statute as possibly being simply a "negligent act" committed while driving intoxicated. *See State v. Johnston*, 563 P.2d 1147, 1148 (Nev. 1977).

---

[8] This error continues to plague the panel's concurrence, where the panel claims in the very first paragraph (and continues the theme throughout) that Anderson's DUI-causing-death "charging document specifically relied on Anderson's failure-to-yield *offense* to establish" the neglect-of-duty element. No. The actual charging document mentioned neither Nevada Revised Statute § 484B.257 (Nevada's failure-to-yield statute) nor Anderson's failure-to-yield criminal complaint or conviction. Nor did it say anything about a "predicate offense"—criminal or otherwise. It simply said that Anderson "did neglect his duty imposed by law to yield from a stop sign to oncoming traffic."

Moving to the text of the "Failure to Yield" statute, it requires Nevada drivers to "stop . . . at a clearly marked stop line . . . . [and] yield the right-of-way." Nev. Rev. Stat. Ann. § 484B.257(1). By both its plain text and Nevada precedent, the statute imposes two separate duties on drivers. *Kerr v. Mills*, 483 P.2d 902, 904 (Nev. 1971) ("NRS 484.319 [now NRS 484B.257] imposed . . . a duty to *stop* 'at the entrance' to [the] road, *and to yield* the right of way to other vehicles 'approaching so closely on such through highway as to constitute an immediate hazard.'") (emphasis added) (citation omitted). Failure to fulfill either duty would constitute misdemeanor Failure to Yield. *Id.* at 904 ("it was the disfavored driver's duty 'not only to stop at the stop sign, but also to look carefully' and permit the favored driver to pass") (citation omitted).

Because misdemeanor Failure to Yield requires the neglect of only one of its two discrete duties, and DUI Causing Death only requires the neglect of one duty for its predicate, the elements of the two crimes would not perfectly overlap to create a double jeopardy issue where the charged individual violated both duties. In Anderson's case, Anderson both failed to stop at the stop sign *and* failed to give the right of way to oncoming traffic. The State could charge Anderson with neglecting *either* as a predicate for Failure to Yield, while using the other as the predicate "neglect of duty" for DUI Causing Death. By neglecting both duties under Failure to Yield, Anderson *ensured* in his specific case that two different duties could be applied under each charge for Failure to Yield and DUI Causing Death—eliminating any double jeopardy claim.

This interpretation is completely consistent with the Nevada Supreme Court's short but categorical statement in Anderson's direct appeal that "[f]ailure to yield is not a

lesser-included offense of DUI causing death *because each requires proof of an element the other does not* 'notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Anderson*, 129 Nev. at 1095 (emphasis added and citation omitted). It is also consistent with Nevada's legislative intent, as authoritatively described by the Nevada Supreme Court elsewhere and cited in *Anderson*. *See Jenkins v. Fourth Jud. Dist. Ct.*, 849 P.2d 1055, 1057 (Nev. 1993) (observing "a clear legislative intent to prevent defendants from escaping a conviction for felony DUI through pleading to a 'lesser charge'") (citation omitted).

### C. Under AEDPA, We Must Defer to the Nevada Supreme Court's Interpretation of Federal Law Unless Inconsistent with Clearly Established Supreme Court Precedent.

In order to grant habeas relief to Anderson, the panel had to conclude the Nevada Supreme Court decision was "an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d)(1). It is worth pausing for a moment to reemphasize that this next point only matters if (a) you indulge the fiction that the correctness of the Nevada Supreme Court's double jeopardy ruling was properly before the panel, and (b) you believe the Nevada Supreme Court's explication of the elements of the two crimes at issue in *Anderson* was unrelated to the actual case before it. Only adventurers who theoretically overcame those predicate obstacles need grapple with this additional flaw in the panel's decision.

Under AEDPA review, "clearly established Federal law" is supplied by Supreme Court precedent—*not circuit court precedent*—that has "squarely addresse[d]" the specific issue and provided a "clear answer to the question

presented," *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (per curiam), based on "materially indistinguishable facts." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Here, the panel block-quoted a Seventh Circuit case that "relied on a trio of Supreme Court cases." *Anderson*, 797 F. App'x at 295, 295 n.1 (quoting *United States v. Hatchett*, 245 F.3d 625, 637 (7th Cir. 2001)). The panel presumably did not apply a "clearly established" rationale if it needed to rely upon an out-of-circuit case that cobbled together multiple Supreme Court cases (and separate opinions) to devise a rule. *See Woodall*, 572 U.S. at 426. "Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced.'" *Lopez v. Smith*, 574 U.S. 1, 7 (2014) (citation omitted) (reversing because the Ninth Circuit applied its own precedent in affirming the grant of a federal habeas petition).

The reason the panel was required to quote an out-of-circuit decision to support its ruling, and not the "trio of Supreme Court cases" directly, is because the Supreme Court's fractured double jeopardy jurisprudence in this area cannot be fairly described as "clearly established."[9] The most recent Supreme Court case addressing double jeopardy in the context of separate prosecutions is *United States v. Dixon*, 509 U.S. 688 (1993). In it, Justice Scalia wrote a four-vote plurality arguing that courts should apply the *Blockburger* test to the crimes as charged (finding a double jeopardy violation), *id.* at 700, while Chief Justice

---

[9] "The Supreme Court has repeatedly warned against applying its precedents at too high a level of generality in determining whether a state court's decision unreasonably applied clearly established federal law." *Turner v. McEwen*, 819 F.3d 1171, 1178 (9th Cir. 2016); *see also Jackson*, 569 U.S. at 512.

Rehnquist's three-vote concurrence reasoned the Court
should only compare the elements of the crimes (finding no
double jeopardy violation). *Id.* at 714 (Rehnquist, C.J.,
concurring in part and dissenting in part).[10] This, of course,
only underscores why the panel's decision in this case is
particularly concerning—if the Supreme Court itself has
been unable to provide a majority opinion that "squarely
addresses" how double jeopardy should be applied to
claimed "lesser-included" crimes in this context, then it is
not appropriate for the Ninth Circuit to tell a state supreme
court it has violated "clearly established" Supreme Court
precedent.

The panel was wrong to reach an issue never raised by
Anderson's federal habeas petition, and it decided wrongly
what it wrongly reached. I hope it is not lost that all this
wrongness happened in the context of AEDPA—where *we*
are not supposed to overturn a state criminal conviction
unless the *state court* was "clearly" wrong.

## 2. The Panel Erred in Finding Ineffective Assistance of Counsel.

Recognizing that the Nevada Supreme Court's
interpretation of Nevada criminal law is binding on this
court, and that Anderson's double jeopardy claim was
ultimately destined to fail regardless, Anderson's only
habeas claim properly before this court—his ineffective
assistance of counsel claim—evaporates. Because he never

---

[10] Worse, since *Hatchett* the Seventh Circuit has itself
acknowledged that "[t]he 'lesser-included-offense' analysis in *Dixon*
included five separate opinions, all reaching different conclusions as to
how *Blockburger* should apply . . . . *we don't see any federal law as
being clearly established from that five-way divide.*" *Boyd v. Boughton*,
798 F.3d 490, 500 (7th Cir. 2015) (emphasis added).

challenged the Nevada Supreme Court's double jeopardy ruling, Anderson created for himself a classic catch-22: if the Nevada Supreme Court's double jeopardy ruling was wrong, his trial counsel's decision to plead guilty and immediately appeal the double jeopardy issue was hardly ineffective.  On the other hand, if the Nevada Supreme Court's double jeopardy ruling was correct and Anderson was ultimately bound to lose his double jeopardy argument on appeal whether he went to trial or not, then by pleading guilty he at least bought dismissal of two of the State's claims.

Anderson's catch-22 lurks beneath the surface of every available path in the panel's chose-your-own-adventure saga, and is the reason why all paths end badly.  It is the reason why the panel felt compelled, in its short memorandum disposition, to try to escape this dilemma by concluding the Nevada Supreme Court was wrong.[11]

## A.  Analyzing Trial Counsel's Actions

Anderson claims, and the federal district court and panel agreed, that the state district court's denial of his pre-plea motion to dismiss his felony DUI charge foreshadowed a successful double jeopardy claim.  *See Anderson*, 797 F. App'x at 294–95.   But Anderson's trial counsel *also* recognized that the State was on notice, via all-caps lettering in the Nevada district court's opinion, that "IF THE STATE IS *UNABLE* TO PROVE ANY VIOLATION OF LEGAL

---

[11] The panel seems to have recognized this problem at oral argument when it asked: "Why didn't you file, in your habeas petition, another claim challenging the Nevada Supreme Court's assertion that double jeopardy didn't apply?" *See Anderson v. Neven*, No. 18-16502, UNITED STATES COURTS FOR THE NINTH CIRCUIT (Nov. 13, 2019), https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000016553 (17:33–17:46).

DUTY AT TRIAL OTHER THAN THE FAILURE TO
STOP, THEN THIS CASE WILL BE DISMISSED."
(emphasis added). Counsel likewise knew, as the State
alleged in multiple filings, that the State could change (and,
per the Nevada district court, *should* change, the specific
neglect-of-duty element charged before or during trial. *See*
Nev. Rev. Stat. Ann. § 484C.430(1) (requiring "any act" or
any other neglected duty). If this had happened, Anderson
risked a jury conviction for all charged offenses and losing
the ability to appeal any plausible double jeopardy claim.
Counsel wisely urged Anderson to plead no-contest to the
failure-to-yield charge and subsequently plead guilty to the
DUI felony charge, "locking in" the predicate offense such
that the State could not change the underlying type of
violation of legal duty. This gave Anderson his best chance
at getting his felony DUI charge dismissed on double
jeopardy grounds. It was a good strategy—probably the best
available under the circumstances.

Justifiably hoping to benefit from the Nevada district
court's explicit warning to the State, Anderson's trial
counsel "locked in" the basis for his double jeopardy claim
and appealed to the Nevada Supreme Court. That court
directly considered and rejected his double jeopardy
argument based on its interpretation of the elements of the
two state criminal offenses charged. *Anderson*, 129 Nev.
at 1095. Given the Nevada Supreme Court's binding
interpretation of the elements of failure-to-yield and DUI
causing death, there is no way Anderson could have
prevailed on his double jeopardy claim. He either would
have pled, appealed, and lost, or he would have gone to trial,
perhaps won a dismissal (if the State didn't change its
complaint), but lost on appeal anyway. Either way, his
double jeopardy claim was destined to fail under Nevada
law.

Anderson's trial counsel was only even potentially ineffective if the Nevada Supreme Court's double jeopardy decision is wrong and reviewable. Of course, when the Nevada Supreme Court addressed the merits of Anderson's double jeopardy claim, it found, *as a matter of state law*, that "[f]ailure to yield [was] not a lesser included offense of DUI causing death . . . ." *Anderson*, 129 Nev. at 1095. But that doesn't mean Anderson's counsel was ineffective—it just means he rolled the dice on Nevada law and didn't get the interpretation of state law he was hoping for. Even if the Nevada Supreme Court erred (as a matter of state *or* federal law), he wasn't ineffective. The Nevada Supreme Court's double jeopardy decision (which Anderson doesn't challenge), not his trial counsel's strategy, is what deprived Anderson of victory. Whether the Nevada Supreme Court was right or wrong, the central claim of Anderson's petition fails: his trial counsel made a legitimate and understandable litigation decision and there was no prejudice *from counsel's actions* under either outcome. *Richter*, 562 U.S. at 104.

### B. Applying Strickland

The panel ignored the "strong presumption" that trial counsel's actions reflect "tactics rather than 'sheer neglect.'" *Richter*, 562 U.S. at 109 (citation omitted). Counsel's actions here, calibrated by both the Nevada district court's ruling and his understanding of the law, were not neglectful. *Strickland*, 466 U.S. at 687. The only way Anderson could have been prejudiced by trial counsel's plead-then-appeal strategy would be if counsel had waived the right to appeal on double jeopardy grounds or the Nevada Supreme Court had denied the double jeopardy claim because jeopardy had not yet attached. But the record is clear: trial counsel preserved the right to appeal, the Nevada Supreme Court believed jeopardy had attached, and addressed his claim on

the merits (just not the way Anderson would have liked). *Anderson*, 129 Nev. at 1095. To hold that "no reasonable attorney would have advised Anderson in this manner," *Anderson*, 797 F. App'x at 294, is based on at least two false assumptions.

The first is that the ultimate result would have been different if Anderson had gone to trial, notwithstanding the Nevada Supreme Court's categorical denial of Anderson's double jeopardy claim. The panel's and federal district court's fixation on how the *state trial court* would have handled the double jeopardy claim absent the plea is inexplicably myopic. Anderson's double jeopardy claim ultimately rose or fell based on how the *Nevada Supreme Court* interpreted the elements of Nevada law, not the state trial court.

The panel decision's second false assumption is that the prosecution would have ignored the pointed, emphatic rhetoric from the Nevada district court and blithely pursued a course destined to fail in the lower court (but, as we all now know, destined to prevail on appeal). Again, the only bases for that assumption are a lack of imagination and a misreading of the DUI causing death statute. To his credit, Anderson's trial counsel did not lack imagination, and took swift action to "lock in" failure-to-yield as the element, thus ensuring the best double jeopardy case possible for Anderson on appeal to the Nevada Supreme Court. As the Supreme Court has repeated, our "adversary system requires deference to counsel's informed decisions [and] strategic choices must be respected." *Strickland*, 466 U.S. at 681; *see also Richter*, 562 U.S. at 109 ("The Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking.").

## CONCLUSION

Sometimes tension exists between justice for criminal defendants and adherence to the strict limits of federal habeas review of state court convictions. This is not one of those cases. Joseph Anderson killed someone after running a stop sign while driving under the influence of marijuana. He got very effective assistance from his trial counsel, the Nevada Supreme Court made its ruling on the elements of Nevada criminal law, and the federal courts granted federal habeas relief. Only the latter is clearly wrong, and this court should have taken this case en banc to fix it.

The panel's concurrence in denial of rehearing en banc essentially asks why I'm making such a big deal since its decision was just an "unpublished memorandum disposition" and doesn't "present a 'question of exceptional importance.'" Respectfully, federalism is exceptionally important. So too is strict adherence to our limited review of state court convictions. Our court ventured out to decide a claim Anderson never raised, casually rejected the state court's binding interpretation of state law, and now has doggedly refused to fix its own mistakes. That should be quite troubling to everyone—not least to our court. If, as the panel claims, this case is no different than "the hundreds of habeas petitions our court adjudicates every year," then yes, we have, in fact, "mounted a full-on federal takeover of the" state criminal justice systems in our circuit, and we need to stop.

\* \* \*

This case has layers of irony. The panel accused the Nevada Supreme Court of muddling its double jeopardy analysis, but in doing so it muddled its own ineffective assistance of counsel analysis. The panel sought to correct

the Nevada Supreme Court's misguided interpretation of the elements of Nevada criminal law, and in doing so incorrectly read Nevada's criminal statutes and incorrectly ignored well-established federal authority recognizing state courts as the final arbiters of state law. And the panel concluded that "no reasonable attorney would have advised Anderson" to plead guilty and appeal his double jeopardy claim, *Anderson*, 797 F. App'x at 294, when arguably no fully informed, reasonable attorney would have advised otherwise.

Ironies notwithstanding, "I doubt the Supreme Court will be amused." *Tarango v. McDaniel*, 837 F.3d 936, 954 n.3 (9th Cir. 2016) (Rawlinson, J., dissenting). At least I hope not. This court menaces federalism when it cavalierly vacates state court convictions that aren't even close calls under AEDPA. This case is a particularly glaring example of that. The Supreme Court has provided us "many rebukes" for such behavior. *Id.* Because this deeply flawed decision presented an easy opportunity to fix our most egregious habeas overreaching, and we failed to do so, I respectfully dissent.